## JARTROUX *v.* DUPEIRE.

The registry of a judgment which decrees " that defendants do return the notes and money already paid by the plaintiff, and that they pay the costs," will not entitle the plaintiff to a mortgage as against third persons, so far as relates to the notes and money. The inscription can produce no effect, the judgment containing no statement of the amount in money for which it was rendered, nor any description of the notes. But it will have effect as a mortgage, for the costs.

APPEAL, by the plaintiff, from a judgment of the Parish Court of New Orleans, *Maurian*, J.

*Bonford*, for the appellant. Article 3289 of our Code gives to a recorded judgment the effect of a mortgage. Its language is general. Whether the judgment direct that a thing shall be given, or something be done or omitted, or a sum of money be paid, it seems equally to be the intention of the legislature to preserve the judgment creditor's right, by the security of a general mortgage upon the debtor's property. Whence did the court below derive the restricted application of art. 3289, to such judgments only as express in their body a fixed sum of money ? Not from any provision of our law further than the application to judgments of art. 3277, which in its terms is confined to conventional mortgages; but from the french hypothecary system, under which it has been held by some authors, that in order to render valid the inscription of a judicial mortgage, a valuation of the debt must be previously made by the judgment creditor. We hope to show conclusively, first, that the french system of inscription has not only, in this respect, not been adopted, but has been actually repudiated by the framers of our Code; and secondly, that under the french system, all judgments, of whatever character they may be, whether for sums of money determinate or indeterminate, or for the doing of or refraining from any act, have, when recorded, the force and effect of mortgages, and that no valuation is required to be made by the judgment creditor in order to give them an hypothecary character.

There is one peculiarity in the french system of inscription, for anything similar to which we look in vain in our own. It is that by which the mortgage creditor is obliged to present to the recording officer, with his title, a *bordereau*, containing certain points in relation to the mortgage and the parties thereto, which are specifically detailed in the 2148th article of the Code Napoléon. Among these, the creditor is enjoined to set out the value of his claim. This value he is permitted to estimate, and the inscription is good up to the amount of his estimation. The debtor is protected from over estimation by the action which the law gives him in such case against the creditor, for a reduction of the estimation. Even conventional mortgages, which with us are required to con-

tain in the act creating them the mention of a sum certain, are subject in France to this system of *bordereaux.* Thus, where a conventional mortgage is given under art. 2132 of the Napoléon Code, for a conditional obligation, or one of indeterminate value, the creditor is entitled to inscription by complying with the requisites of art. 2148. Such a system does not prevail with us. That our legislators did not intend to engraft it upon our law is evident from a comparison of art. 3277 of our Code with the corresponding article of the french Code, no. 2132. Our article contains the simple enunciation that no conventional mortgage shall be valid, unless the exact sum for which it was given be declared in the act. The french article in addition, contains the clause of which we have just spoken, entitling the creditor to inscribe with an estimation. Why was this portion omitted in our article? For the palpable reason that the french system of inscription with the aid of *bordereaux,* was not designed to be put in force here.

Thus art. 2148 of the french Code, which contains nearly all its legislation upon this subject, is entirely omitted in our Code. If in France positive legislation was necessary to make it incumbent upon the creditor to attach a fixed and definite value to his judgment, such legislation is equally as necessary here to force the judgment creditor into the same position. As our Code now stands, there is a positive provision requiring all conventional mortgages to contain a declaration of the exact sum for which they are given. It is silent as to legal and judicial mortgages. And yet this silence of our Code, this designed omission to incorporate the french system of inscription into our own, is not, it is contended, to be taken as proof that those provisions have not the force of law here, but, on the contrary, is evidence that they exist here by analogy and inference, because they exist in France by positive legislation.

But is it true that, in France, such judgments only can have the force of mortgages as condemn to the payment of a sum certain, or such as the owner has caused to be inscribed with the *bordereaux* mentioned in art. 2148. Troplong, Tarrible, Grenier, Persil, Dalloz, all the french authors agree, that any judgment which condemns the party cast to the performance of an obligation, of whatsoever character it may be, produces a mortgage. See the authorities in Troplong, Des Privilèges et Hypothèques, vol. 1, p. 266, § 438. Grenier, Persil, Dalloz, and the Court of Cassation decide that even the judgment which condemns the defendant to render an account, produces a judicial mortgage. Grenier t. 1, no. 195. Persil, Questions, p. 83. Dalloz, *vo.* Hypothèque no. 2. Cass. 21 Août, 1810. 4 Août, 1825. Lyons, 11 Août, 1809. Is it matter then of doubt that a definite judgment, such as the one on which this action was instituted, would in France be susceptible of becoming by inscription, a judicial mortgage? But it is averred that, although such a judgment contains all the requisites to form a mortgage by inscription, yet when the creditor in France seeks to make it available as an hypothecary claim, he must comply with art. 2148, and estimate, in the *bordereau,* the value of the debt. Grenier, it is true, supports this view. It is far however from being the opinion of more recent commentators; and the contrary view may be said to be now firmly established by repeated decisions of the highest Tribunals. Troplong, Des Privileges et Hypothèques, vol. 2, § 681, declares that it is altogether unnecessary to put a valuation on the judgment claim in order to give effect to the inscription. In this view he is supported by Duranton, vol. 20, no. 117, by three decisions of Courts Royal, and one of the Court of Cassation; one of the decisions being as late as the year 1839. See Cass. 4 Août, 1825. Paris, 16 Mars, 1822. Rouen, 19 Février, 1828. Limoges, 5 Décembre, 1839. This last case will be found in the Journal du Palais for 1840, p. 539. In the case decided by the Court of Cassation, the holder of the judgment declared that he could not place any fixed value upon his claim, but that it was of considerable value, and it was held that this judgment, which condemned the defendant to render an account, was entitled by its inscription to rank as a mortgage. Whether therefore, the french rule of inscription is considered to be in force in Louisiana, or not, the court below decided erroneously, because, under either system, no valuation is necessary to give an hypothecary effect to the judgment when recorded.

*Morel,* on the same side.

*C. Janin* and *Grymes,* for the defendant.

*Eyma,* for the recorder of mortgages, called in warranty, cited C. C. 3277.

JARTROUX    Code Nap. 2132. Grenier, Hypothèques, v. 1, p. 264. Dict. Gen. du Droit
v.          Civil, v. 4, p. 96, no. 68, *verbo* Hypothèque ; p. 215, *verbo* Inscription. 1
DUPEIRE.    Pothier, 264.

The judgment of the court was pronounced by

SLIDELL, J.  The plaintiff claims to be an hypothecary creditor, upon property formerly owned by Debergue, and now in the possession of the defendant, by virtue of a judgment obtained and recorded against Debergue, before the rights of the defendant were acquired.  In the suit of *Jartroux* v. *Debergue and others*, the plaintiff obtained a verdict of the jury in these words : " The jury find a verdict in favor of the plaintiff for the refunding of such sums of money as the plaintiff has paid, and returning of the notes given by him; or, in default thereof, for the amount of the same, and damages to the amount of $1,500." Upon this loose and uncertain verdict, a judgment was entered in the following terms : " The court being satisfied with the legality of said verdict, it is decreed that judgment be entered according to said verdict, in favor of the plaintiff, and against the defendants, for the sum of $1,500, as damages; that said defendants do return the notes and money already paid by the plaintiff, and that the defendants pay the costs."

So far as the sum of $1,500 damages is concerned, it may be left out of view. That part of the judgment was remitted by *Jartroux*.  Of the costs we will speak hereafter.  The residue of the judgment will be at present considered. We do not think it necessary to decide the point urged by counsel, that the judgment in question was, even between the parties to it, void for uncertainty. We confine ourselves to the question of inscription, as affecting third persons.

This judgment was recorded in the terms above stated.  The inscription was consequently uncertain, and did not inform the public what amount of money was decreed to be paid, and what notes were to be restored to the plaintiff.  We deem it to be our duty, under the fair interpretation and intendment of our registry laws, to hold this inscription invalid, because it does not exhibit any definite pecuniary amount, nor any description of the notes to be returned.  This essential information should be patent upon the public records of the mortgage office. The creditor cannot be permitted to inscribe a loose and obscure notice, and leave third persons to ferret out elsewhere the extent of the antecedent encumbrance claimed by him.  If he desires to obtain by inscription the security of a judicial mortgage, let him ask and obtain his judgment from the court in a distinct and intelligible form.  If a contrary practice were tolerated, confusion, mistakes, and injustice, would be the inevitable result.

As to so much, therefore, of this judgment, as decrees that "the defendants return the notes and money already paid," we consider it as not having acquired, by the inscription, the force of a judicial mortgage ; and in this respect the hypothecary action must fail.  As regards the costs given by the judgment in question, we consider the plaintiff entitled to be recognized as a mortgage creditor. In the sheriff's sale to *Dupeire*, these costs are stated at the sum of $232, and the purchaser was allowed to retain so much of the price to satisfy that incumbrance.  In this respect, therefore, the judgment of the court below must be corrected.

It is therefore decreed that the judgment of the court below be reversed; and it is further decreed that the said *François Jartroux* be recognised as a mortgage creditor, for the sum of $232, with interest from the 8th day of June, 1843, and costs of this suit in both courts, upon the following described real

estate, to wit: 1st. A certain lot of ground situated in faubourg Marigny, in Elysian Fields street, measuring fifty one feet front on said street, between Casacalvo and Moreau streets, by one hundred and forty-five and a half feet deep ; said lot is designated by the number ninety-three, on the plan of said faubourg ; together with all the buildings on said premises, without any exception or reserve whatever. 2d. Another certain lot of ground designated by the number ninety-two, on the plan of said faubourg Marigny, situated in said faubourg, and measuring fifty-one feet front, more or less, on Marigny street, between Casacalvo and Moreau streets, by one hundred and forty-five feet six inches deep, more or less, bounded on the side towards Casacalvo street by property belonging to M. Ulm, and on the side towards Moreau street by that of John L. Thielen, together with the buildings thereon; and that the same be sold to pay and satisfy to the said *Jartroux*, the sum, interest, and costs aforesaid.